**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

| | |
|---|---|
| KIM MARIE WEBB-BEIGEL, <br><br> Plaintiff <br><br> - against – <br><br> UNITED STATES OF AMERICA, <br><br> Defendant. | Case No.: _____ <br><br> ECF CASE <br><br> **COMPLAINT** <br><br> **DEMAND FOR JURY TRIAL** |

Plaintiff, by her attorneys, alleges the following:

**NATURE OF THE CASE**

1. This case involves the tortious mistreatment and bullying, in April 2017, by Defendant – the United States of America, acting through certain of its agents of the Transportation Security Administration (the "TSA"), an agency of the United States – of Plaintiff Kim Marie Webb-Beigel ("Ms. Webb-Beigel), then a 59-year-old grandmother who was disabled and in grave pain following major neck surgery and a serious rotator-cuff injury, and attempting to clear airport security at Queens, New York's John F. Kennedy International Airport ("JFK Airport").  In short, the TSA's agents, defying common decency and sense, inhumanly refused to allow Plaintiff to take her pain and anti-anxiety medication and, worse still, after forcing her to try to perform physical acts she was then physically unable to do, and verbally abusing her and causing her to become distraught, they proceeded to engage in a prolonged, mockful and otherwise improper pat-down search that resulted in extreme pain and severe emotional distress to the point that she became temporarily paralyzed and could not even walk to the security gate.

## PARTIES

2.      Plaintiff is a 60-year-old woman who resides in Tucson, Arizona and is a citizen of that State.

3.      Defendant United States of America ("USA") was, at all material times, acting an airport security checkpoint at JFK Airport by and through its agencies, including the Department of Homeland Security and the Transportation Security Administration ("TSA"), and their agents and employees, acting in the scope and course of authority, agency and employment, which agents/employees are investigative officers.

## JURISDICTION AND VENUE

4.      This complaint seeks money damages based upon the herein listed torts committed by employees of certain of the Defendant Government.  The Court therefore has jurisdiction over the claims asserted herein pursuant to, *inter alia*, 28 U.S.C. §1346(b)(1) and 28 U.S.C. § 1331.

5.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(e)(1)(C) because Plaintiff resides in this judicial district.

## MATERIAL FACTS

**Ms. Webb-Beigel's Painful and Debilitating Neck Surgery and Rotator Cuff Injury**

6.      In February 2017, Plaintiff underwent posterior cervical fusion surgery on her neck in New York.

7.      As a result of that complicated and serious surgery, she was in great pain and required to wear a highly restrictive neck brace twenty-four hours a day for several months, and was otherwise severely limited physically, in terms of mobility, the amount

of weight she was permitted to lift (no more than three pounds), and the amount of permitted physical activity (no exercise permitted).

8. At that time, Ms. Webb-Beigel was also suffering from an injured rotator-cuff that rendered it extremely painful, if not impossible, to raise her arm above her head, as well as pain from spinal arthritis.

9. In order to alleviate the serious physical pain and trauma that followed the neck surgery, she was required to take narcotic pain medication four times a day, as well as anti-anxiety medication three times a day.

10. In April of 2107, Ms. Webb-Beigel returned to New York to visit with an orthopedic surgeon concerning her rotator cuff, and was advised that she had a severe tear of her rotator cuff, a ganglion cist and bone spurs, which would require surgery as soon as her neck had completely healed from the cervical fusion surgery.

11. However, that healing process would take several more months, and during that time, she was not supposed to use her right arm or even walk, as arm movement from walking could exacerbate the rotator cuff tear and result in even more complicated surgery.

**The TSA's Outrageous Refusal to Permit Ms. Webb-Beigel to Take Her Pain Medication and Its Other Extreme and Outrageous Mistreatment of Her**

12. After meeting with her New York-based orthopedic surgeons, Ms. Webb-Beigel returned to New York's John F. Kennedy Airport on April 26, 2017 in order to fly back home to Tucson, Arizona, via American Airlines flight No. 1194, which was scheduled to leave at 5:10p.m.

3

13. Around 4:00 p.m., after checking her bags with the aid of a porter, Ms. Webb-Beigel sought wheelchair assistance – not only because she was not supposed to walk, but also because she wished to get through security as soon as possible so that she could buy a bottle of water to ingest her pain medication.

14. Unfortunately, her 72-year-old husband – Herbert Beigel, who was himself suffering from the aftermath of surgery for a broken hip – was also in need of a wheelchair, and due to a paucity of personnel at the airport to help retrieve them, and her gracious desire not to inconvenience other passengers in need of one, she decided to let her husband use the one wheelchair that they were able to quickly secure, and she tried walking without swinging her right arm by keeping her right hand in her pocket.

***Extreme and Outrageous Mistreatment by TSA Agent No. 1***

15. Ms. Webb-Beigel and her husband were pre-checked passengers and, although he was permitted to go through the standard scanner, she was refused permission by a TSA agent – whose identity is unknown but can be described as a Caucasian male ("TSA Agent No.1") – to do the same, despite her telling him that she would be unable to raise both of her arms above her head, as required to do with the full-body scanner.

16. Instead, TSA Agent No. 1 directed her to go to the full-body scanner, and while inside that machine, she was directed by another TSA employee – whose identity is unknown but can be described as a Caucasian male ("TSA Agent No. 2") – to raise both of her arms above her head and touch her fingers.

***Extreme and Outrageous Mistreatment by TSA Agent No. 2***

17.     When Ms. Webb-Beigel explained that she could not do that (due to painful rotator cuff injury), TSA Agent No. 2 ignored her and demanded that she do as told.

18.     Ms. Webb-Beigel attempted to comply with TSA Agent No. 2's unreasonable demand, but experienced considerable and obvious pain and was unable to touch her fingers together.

19.     TSA Agent No. 2 then told Ms. Webb-Beigel to exit the scanner and that she would need to undergo a full body pat-down.

20.     After being escorted to a small area on the other side of the security scanner conveyor belt, Ms. Webb-Beigel immediately requested her purse (which had passed through the security x-ray scanner without incident) so that she could purchase a bottle of water and take her pain medication.

***Extreme and Outrageous Mistreatment by TSA Agents No. 3***

21.     Instead of displaying even a modicum of compassion and human decency and accommodating Ms. Webb-Beigel's simple request, another TSA employee,– whose identity is unknown but can be described as an African-American woman ("TSA Agent No. 3") – told her to remove her boots.

22.     In response, Ms. Webb-Beigel explained that she was unable to do that without a chair and requested again her purse, which was sitting on the nearby x-ray scanner machine's conveyor belt.

23. Once again failing to display a modicum of compassion and human decency and accommodating Ms. Webb-Beigel's simple request, TSA Agent No. 3 responded by asking Ms. Webb-Beigel in a hostile manner if she was refusing to remove her shoes.

24. Ms. Webb-Beigel then asked the three TSA agents for assistance removing her shoes, but TSA Agent No. 3 refused and threatened to contact some other TSA agent if Ms. Webb-Beigel "refused" to do as told – when in fact she was not refusing to do anything and was simply physically unable, due to her physical/medical issues, to perform the task that TSA Agent No. 3 was trying to bully her into doing.

25. Ms. Webb-Beigel responded by continuing to request to be able to take her pain and anxiety medication and was repeatedly refused.

26. Fearing that she and her husband would miss their flight, Ms. Webb-Beigel attempted to remove her shoes without a chair and nearly fell in the process, prompting her husband to say to TSA Agent No. 3 that she was not permitted (by her doctors) to try to do that.

27. Lacking any civility or common sense, TSA Agent No. 3 responded by throwing up her hands in a hostile manner and said: "That's it.  We are going no further.  I'm uncomfortable."

28. Ms. Webb-Beigel responded by pleading with TSA Agent No. 3 for help and to perform the pat-down search, but the agent mercilessly refused.

29. Ms. Webb-Beigel then continued to request to be permitted to take her medication but that was again repeatedly refused.

### *Extreme and Outrageous Mistreatment by TSA Supervisor John Lamb*

30. Crying and in extreme pain, Ms. Webb-Beigel was then approached, in a hostile manner, by John Lamb, a TSA agent acting in a supervisory role over the other TSA agents.

31. She asked him to bring her water so that she could take her overdue medication, but he, too, refused.

32. Distraught from such inhumane conduct and being precluded from taking her medication, she expressed her anger over how she was being mistreated, and Mr. Lamb replied by saying "We will not proceed until you talk nice to me."

33. This went on for several minutes, as Mr. Lamb continued to refuse to proceed with a pat-down check or to allow her to take her medicine – all the while increasing her pain and distress.

34. Unsatisfied with trying to humiliate and upset a 59-year-old woman who was already distraught, in pain, and simply trying to take her medication, Mr. Lamb also threatened to call the police although she had violated no law or done anything wrongful.

35. Ms. Webb-Beigel told Mr. Lamb to go ahead and call the police but he then responded by continuing to insist that she had to "talk nice" to him.

36. After Ms. Webb-Beigel pointed out that she was not obligated to be "nice" to him and that TSA needed to proceed with its security search, Mr. Lamb called the police – who refused to arrest her.

*The TSA's Extreme and Outrageous Pat-down Search*

37. Ms. Webb-Beigel was then aken into a private room for a pat-down, although she told Mr. Lamb that she did not need privacy and asked that the pat-down search be conducted in the presence of her husband.

38. Once again displaying a lack of human decency and common sense, that simple request was denied, and instead, three female TSA agents – whose identities are unknown, proceeded to conduct a prolonged pat-down search outside the presence of Ms. Webb-Beigel's husband and treated her in a mocking fashion.

39. Worse still, the pat-down search not only took more time than was necessary – in excess of fifteen minutes – but it was also conducted in an unnecessarily intrusive manner, with the agents rubbing painfully against her extremely sensitive hip where a bone graft for her neck surgery was performed, despite Plaintiff's previous plea to be careful in view of her painful areas.

40. And, as if those agents' conduct was not disgraceful enough, they then continued to refuse to permit Ms. Webb-Beigel to take her pain and anxiety medicine.

41. As a result of this traumatic ordeal, Ms. Webb-Beigel's muscles went into full spasm, and she was completely disabled and unable to walk – requiring her husband to relinquish his wheelchair for her benefit and suffer a lengthy walk with a cane to their flight's gate.

**The TSA's Rejection of Ms. Webb-Beigel's Claim Under Federal Tort Claims Act**

42. The Federal Torts Claim Act (the "FTCA") waives sovereign immunity and permits a citizen to sue the United States for certain torts.

43. On May 25, 2017, Ms. Webb-Beigel submitted to the TSA a completed and signed Tort Claim Package, which explained the TSA's tortious conduct explained above and made a claim under the Federal Tort Claims Act.

44. By letter dated January 24, 2018, the TSA denied Ms. Webb-Beigel's claim (which was assigned no. 2017063041146).

45. Thus, Plaintiff has exhausted all administrative remedies and has otherwise fulfilled all conditions precedent to filing suit.

## AS AND FOR THE FIRST CAUSE OF ACTION

(Infliction of Emotional Distress)

46. The allegations of the preceding paragraphs are repeated as if fully set forth herein.

47. Defendant owed Plaintiff a duty to not engage in conduct that would unreasonably endanger her physical safety, or causes her to fear for her own safety, or otherwise cause her severe emotional distress.

48. As described above, Defendant, acting by and through its TSA agents, breached that duty, including by forcing her to engage in physical acts that caused severe physical pain, inhumanely refusing to let her take her pain and anti-anxiety medication, and imposing a prolonged and painful pat-down search, outside the requested presence of her husband, during which they engaged in bullying and intimidating behavior and otherwise mocked her.

49. Defendant's breaches of its duty proximately caused harm to Plaintiff consisting of not just physical pain, but also by unreasonably endangering her physical

safety, and causing her to fear for her own safety, and otherwise causing severe emotional distress, to the point that she was left temporarily unable to walk.

50. Defendant's mistreatment of Plaintiff was extreme and outrageous and went beyond all possible bounds of decency, such that it is to be regarded as atrocious, and utterly intolerable in a civilized community.

51. As a result, Defendant is liable to Plaintiff for its infliction of emotional distress.

## AS AND FOR THE SECOND CAUSE OF ACTION

(False Imprisonment)

52. The allegations of the preceding paragraphs are repeated as if fully set forth herein.

53. As described above, Defendant, acting by and through its TSA agents, engaged in extreme and outrageous mistreatment of Plaintiff, including forcing her to endure against her will an unreasonably length detention, wholly unnecessary, as well as a prolonged pat-down search in a separate room, outside the requested presence of her husband– lasting over fifteen minutes, instead of the mere minute or less it should have lasted – and all while being inhumanely prevented from leaving and taking her medication, and being subject to bullying and intimidating mocking.

54. By taking Defendant into a separate room, outside the requested presence of her husband and away from her medication, for an unreasonable amount of time, Defendant intentionally confined Plaintiff for a period of time, and in a manner, that she was conscious of and that she did not consent to, and that was otherwise not privileged

55. Defendant's unreasonably prolonged and bullying detention of Plaintiff, without lawful grounds to do so, constitutes false imprisonment for which it is liable per the FTCA.

### AS AND FOR THE THIRD CAUSE OF ACTION

(Battery and Civil Assault)

56. The allegations of the preceding paragraphs are repeated as if fully set forth herein.

57. As described above, Defendant, acting by and through its TSA agents, engaged in extreme and outrageous mistreatment of Plaintiff – including forcing her to engage in physical acts that caused severe physical pain; inhumanely refusing to let her take her pain and anti-anxiety medication; and imposing a prolonged and painful pat-down search, outside the requested presence of her husband, during which they engaged in bullying and intimidating behavior and otherwise mocked her.

58. Defendant's misconduct did not merely include intentional harmful contact without Plaintiff's consent, but also constituted a form of intimidation and bullying and otherwise foreseeably placed Plaintiff in imminent apprehension of further harmful contact.

59. Defendant is therefore liable for battery and civil assault, per the FTCA.

### AS AND FOR THE FOURTH CAUSE OF ACTION

(Violation of Plaintiff's Constitutional and Civil Rights)

60. The allegations of the preceding paragraphs are repeated as if fully set forth herein.

61. At all material times, Defendant's (TSA) agents were acting under color of federal authority, each of them identifying themselves as a TSA officer or agent

62. At the date and times indicated above, Plaintiff was subjected to a search by Defendant's TSA agents while she was lawfully attempting to board a flight from JFK Airport to Phoenix, Arizona.

63. As described above, the search conducted by Defendant, acting by and through its TSA agents, was unreasonable, unconstitutional, illegal and otherwise wrongful, because Defendant did not have any cause to conduct the search in the extreme and outrageous manner in which it did – including forcing her to engage in physical acts that caused severe physical pain; inhumanely denying her access to her pain and anti-anxiety medication; and imposing a prolonged and painful pat-down search, outside the requested presence of her husband, during which they engaged in bullying and intimidating behavior and otherwise mocked her.

64. Defendant's abusive search of Plaintiff constituted an excessive use of force and a serious and significant deprivation of her rights, privileges and immunities under the U. S. Constitution and the State of New York's Constitution, and in particular, violated Plaintiff's right to be free from unreasonable searches and seizures under the U.S. Constitution's Fourth Amendment.

65. As a direct result of Defendant's wrongful search, Plaintiff was caused to sustain various damages that brought her to tears and left her temporarily unable to walk, including, but not limited to, severe emotional stress and anxiety, physical pain, suffering, embarrassment, and humiliation.

.

WHEREFORE, Plaintiff prays for judgment in its favor and against Defendant, as follows:

i. Money damages not exceeding $500,000;

**ii.** Costs and attorney's fees;

ii. Such other, further and different relief as the Court deems just and proper.

## REQUEST FOR A JURY TRIAL

Plaintiff requests trial by jury for all claims so triable.


Dated:  Tucson, Arizona           LAW OFFICES OF HERBERT BEIGEL
        July 20, 2018

                                  By: /s/ Herbert Beigel
                                     Herbert Beigel
                                     38327 S. Arroyo Way
                                     Tucson, AZ 85739
                                     520-825-1995
                                     Fax: (520) 844-6215
                                     Email: hbeigel@me.com