**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kim Marie Webb-Beigel, | No. CV-18-00352-TUC-JGZ |
| Plaintiff, | **ORDER** |
| v. | |
| United States of America, | |
| Defendant. | |

Plaintiff brings this action under the Federal Tort Claims Act (FTCA), 28 U.S.C. § 1346(b)(1), asserting various tort and constitutional claims against the United States arising out of her security screening by Transportation Security Administration (TSA) agents at an airport checkpoint. Plaintiff alleges that the manner in which she was screened caused her physical pain and emotional distress and resulted in a muscle spasm that rendered her unable to walk from the checkpoint to the gate for her flight. (Doc. 1.) She seeks $500,000 in damages.

Pending before the Court is the United States' Motion to Dismiss the Complaint for lack of subject matter jurisdiction. (Doc. 9.) For the following reasons, the Court will deny the Motion to Dismiss Plaintiff's intentional tort and negligent infliction of emotional distress claims, but will grant the Motion to Dismiss the remaining constitutional claims.

//
//

**Factual Background**

Plaintiff alleges the following. On April 26, 2017, after having undergone neck surgery a few months prior, Plaintiff arrived at New York's John F. Kennedy Airport for her flight home to Tucson. She was 59 years old and was accompanied by her 72-year-old husband, who had recently undergone hip surgery. Due to Plaintiff's surgery and other injuries to her rotator cuff, doctors informed her she could not raise her arms and that she should limit her walking. Upon arriving at the airport, Plaintiff and her husband each requested a wheelchair, but there was only one available, so Plaintiff's husband used it while Plaintiff walked.

Once Plaintiff and her husband arrived at the security checkpoint, TSA agents directed Plaintiff's husband through the standard scanner. Agent 1 directed Plaintiff to the full-body scanner, however, despite the fact that Plaintiff had informed Agent 1 that she could not raise her arms above her head, as required for the full-body scanner. A second agent nonetheless instructed Plaintiff to raise her arms, ignoring her earlier request to be exempt. Plaintiff attempted to follow Agent 2's orders, but experienced pain and was unable to complete the request. Agent 2 then escorted Plaintiff to an area near the security conveyor belt, where she was told a pat-down search would occur. Due to Plaintiff's increasing pain, she requested her purse, which had successfully gone through the x-ray machine, so that she could retrieve her pain medication. Agent 3, now participating in the pat-down, ignored Plaintiff's requests and ordered her to remove her boots, which Plaintiff explained she was unable to do without the assistance of a chair. Plaintiff once again asked for her purse and for the agents to assist her in taking off her shoes. Agent 3 refused to help Plaintiff and threatened to contact another TSA agent if Plaintiff did not comply. Plaintiff once again requested her pain medication, as well as her anti-anxiety medication.

Worried that she may miss her flight, Plaintiff attempted to remove her shoes and almost fell in the process. Her husband told the agents she was not allowed to perform such actions, and, shortly thereafter, TSA supervisor John Lamb approached Plaintiff. She asked Lamb for her medication, but he also refused. Plaintiff voiced her frustration with

Lamb, who responded by telling Plaintiff that she must "talk nice" to him. Plaintiff asked Lamb to proceed with the pat-down search as well as for her medication, but Lamb refused. Lamb instead called the airport police, who arrived but refused to arrest Plaintiff.

Plaintiff was then escorted to a private room for a pat-down search. She requested her husband's presence, but the agents refused and three female agents "proceeded to conduct a prolonged pat-down search . . . and treated [Plaintiff] in a mocking fashion." During the search, which lasted over 15 minutes, the agents rubbed Plaintiff's hip, despite knowing of its sensitivity due to a bone graft used for her neck surgery. As a result of the incident, Plaintiff's muscles spasmed, and she was unable to walk to her flight's gate, requiring her to use the wheelchair while her husband walked.

On May 25, 2017, Plaintiff submitted a claim to TSA. The claim was denied by letter dated January 24, 2018, and Plaintiff filed this suit. Plaintiff asserts claims for assault, battery, false imprisonment, negligent infliction of emotional distress,[1] and constitutional violations arising out of the TSA agents' alleged conduct during Plaintiff's screening and pat-down search.

**Standard of Review**

Federal Rule of Civil Procedure 12(b)(1) allows litigants to seek the dismissal of an action from federal court for lack of subject matter jurisdiction. *Tosco Corp. v. Communities for a Better Env't*, 236 F.3d 495, 499 (9th Cir. 2001) (per curiam), *overruled on other grounds by Hertz Corp. v. Friend*, 559 U.S. 77 (2010). Federal courts are courts of limited jurisdiction, and can only hear those cases authorized by the Constitution and by statute—namely, cases involving diversity of citizenship, a federal question, or cases to which the United States is a party. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). "It is to be presumed that a cause lies outside this limited jurisdiction . . . and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Id.* (internal citations omitted). Accordingly, on a motion to dismiss for lack of subject-

---

[1] Plaintiff clarifies in her Opposition to Defendant's Motion to Dismiss that her claim is for negligent infliction of emotional distress, rather than intentional. (Doc. 12, pg. 5.)

- 3 -

matter jurisdiction, the plaintiff generally must demonstrate that subject-matter jurisdiction exists to defeat dismissal. *See A-Z Int'l v. Phillips*, 323 F.3d 1141, 1145 (9th Cir. 2003) (citing *Stock W., Inc. v. Confederated Tribes*, 873 F.2d 1221, 1225 (9th Cir. 1989)).

A party may bring a facial or factual attack on subject matter jurisdiction under Rule 12(b)(1). *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). A "facial attack" accepts the truth of the complaint's allegations, but asserts that they are "insufficient on their face to invoke federal jurisdiction." *Id.* A "factual attack" challenges the truth of the complaint's allegations, and asserts that federal jurisdiction does not exist in fact by introducing evidence outside the pleadings. *Id.* Because the United States does not substantially challenge the truth of the underlying facts in the complaint for purposes of this Motion, the United States' Motion to Dismiss is a facial attack, and the Court will therefore accept the facts asserted in the Complaint as true.

**Discussion**

Under the doctrine of sovereign immunity, "the United States may not be sued without its consent." *United States v. Mitchell*, 463 U.S. 206, 212 (1983). The FTCA provides a limited waiver of the government's sovereign immunity for certain tort claims "caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b)(1). The "United States bears the burden of proving the applicability of one of the exceptions to the FTCA's general waiver of immunity." *Prescott v. United States*, 973 F.2d 696, 702 (9th Cir. 1992).

The United States moves to dismiss Plaintiff's intentional tort claims under one of the exceptions to the FTCA's general waiver of immunity, and argues that the Court lacks subject matter jurisdiction over Plaintiff's claim for negligent infliction of emotional distress as well, because it arises out the same conduct as her other tort claims. The United States further argues that Plaintiff's remaining claims should be dismissed because the FTCA does not permit claims against the United States for alleged violations of the Constitution, and because the Courts of Appeals have exclusive jurisdiction over

challenges to TSA screening procedures.

## I. Assault, Battery, and False Imprisonment

The United States contends that Plaintiff's intentional tort claims for assault, battery, and false imprisonment, are precluded by an FTCA exception, 28 U.S.C. § 2680(h), which deprives federal courts of subject matter jurisdiction over "[a]ny claim arising out of assault, battery, [or] false imprisonment," unless committed by "investigative or law enforcement officers of the United States Government." An "investigative or law enforcement officer" is defined as "any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law." *Id.* This definition is disjunctive, meaning TSA agents qualify as "investigative or law enforcement officers" if they are empowered by law to perform any of the three tasks. *See Azure v. Morton*, 514 F.2d 897, 900 (9th Cir. 1975).

The United States asserts that Transportation Security Officers ("TSOs" or "TSA agents" or "screeners") are not "officers" within the meaning of § 2680(h), in part because they are not "empowered by law to execute searches" "for violations of Federal law." Although the United States devotes much of its brief to unpacking the meaning of "officer," the FTCA does not define it. The Act defines only the phrase "employee of the government," which includes "officers or employees of any federal agency, members of the military or naval forces," and others. 28 U.S.C. § 2671. Most dictionary definitions of the word run the gamut as well, though prominent sources from the time § 2680(h) was written are broad enough to incorporate the role played by TSA agents. *See Officer*, Webster's Third New International Dictionary (1971) (defining an "officer" as "one who serve[s] in a position of trust" or "authority," especially as "provided for by law"); *Officer*, Black's Law Dictionary (4th ed. Rev. 1968) ("[A]n officer is one holding a position of trust and authority[.]").

The United States' argument that TSA screeners are not "officers" because they are deemed "employees" under the Aviation and Transportation Security Act is unpersuasive. 49 U.S.C. § 44901(a) of that Act provides that airport screening "shall be carried out by a

- 5 -

Federal Government employee (as defined in section 2015 of title 5)." Section 2015, however, defines an "employee" as "an officer and an individual" who is specifically appointed and "engaged in the performance of a Federal function." Moreover, section 2014 of the same title defines an "officer" as "a justice or judge of the United States and an individual who is" appointed by the President, a court, the head of an Executive agency, or the Secretary of the military department and "engaged in the performance of a Federal function"—which would clearly not encompass a TSA screener, or any other traditional law enforcement officer. The Aviation and Transportation Security Act thus says little about whether a TSA screener qualifies as an investigative or law enforcement officer under the FTCA. *See also* 49 U.S.C. § 44922(e) (providing that "[a] State or local law enforcement *officer* who is deputized" into federal service by the TSA Administrator "shall be treated as an '*employee* of the Government'" for purposes of the proviso) (emphases added). That the Aviation and Transportation Security Act permits designation of a "law enforcement officer" under 49 U.S.C. § 114(p)(1) is similarly uninformative. Under Section 114(p)(1)-(2), the TSA Administrator may appoint law enforcement officers who have the authority to carry a firearm, make arrests, and seize evidence. This says nothing, however, about the authority of a TSA screener.

The most informative guidance for properly interpreting the word "officer" is provided by § 2680(h) itself: those "empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law." Congress was concerned, above anything else, with safeguarding against abuses committed in the execution of the three specified actions. *See* S. Rep. No. 93-588 (noting that "[a]s a general principle under present law, if a Federal agent violates someone's constitutional rights-- for instance, Fourth Amendment rights against illegal search and seizure-- there is no remedy against the Federal Government," as well as the view "that the Federal Government should be liable for the tortious acts of its law enforcement officers when they act in bad faith or without legal justification"). Likely for this reason, few if any cases outside of the TSA-agent context have analyzed extensively whether the actor was an "officer" as opposed to

an "employee." Rather, regardless of the actor's formal title, the focus is consistently on whether the actor is authorized to search, seize, or arrest.[2] *See Bunch v. United States*, 880 F.3d 938, 941 (7th Cir. 2018) ("the waiver of sovereign immunity holds as long as the tortfeasor is empowered to search, seize evidence, or arrest").

The 49 U.S.C. § 44901(a) "screening of all passengers and property" conducted by TSA agents, is defined as "a physical examination or non-intrusive methods of assessing whether cargo poses a threat to transportation security." *Id.* at § 44901(g)(4). To even qualify for the job, "[s]creeners who perform pat-downs or hand-held metal detector searches of individuals shall have sufficient dexterity and capability to thoroughly conduct those procedures over an individual's entire body." 49 U.S.C. § 44935(f)(1)(B)(v). This description fits comfortably within the definition of a "search" provided in *Terry v. Ohio*, 392 U.S. 1, 16 (1968), which held that "it is nothing less than sheer torture of the English language to suggest that a careful exploration of the outer surfaces of a person's clothing all over his or her body in an attempt to find weapons is not a 'search.'" "Airport screenings of passengers and their baggage constitute administrative searches and are subject to the limitations of the Fourth Amendment." *United States v. Marquez*, 410 F.3d 612, 616 (9th Cir. 2005); *see also United States v. Aukai*, 497 F.3d 955, 956-57, 60 (9th Cir. 2007) (reiterating the holding that "airport screening searches are constitutionally reasonable administrative searches," not contingent on passenger consent). Although airport screenings have been deemed administrative searches, and "*Terry* typically requires reasonable suspicion for a search[,] . . . the existence of reasonable suspicion determines

---

[2] *See, e.g.*, *Caban v. United States*, 671 F.2d 1230, 1234 n.4 (2d Cir. 1982) (INS agents empowered to search and arrest); *Nurse v. United States*, 226 F.3d 996, 1002 (9th Cir. 2000) (Customs and Border Patrol officers empowered to arrest); *Celestine v. United States*, 841 F.2d 851, 853 (8th Cir. 1988) (per curiam) ("VA employees who are VA police officers are empowered to make arrests for violation of federal law"); *Hernandez v. Lattimore*, 612 F.2d 61, 64 n.7 (2d Cir. 1979) ("officers or employees of the Bureau of Prisons of the Department of Justice [] [may] make arrests"); *Moore v. United States*, 213 F.3d 705, 708 (D.C. Cir. 2000) (postal inspectors empowered to make arrests); *Wilson v. United States*, 959 F.2d 12, 15 (2d Cir. 1992) (per curiam) (parole officers not investigative or law enforcement officers because not empowered to arrest); *EEOC v. First Nat'l Bank of Jackson*, 614 F.2d 1004, 1008 (5th Cir. 1980) (Equal Employment Opportunity Commission agent lacked authority to search, seize, or arrest); *Solomon v. United States*, 559 F.2d 309, 310 (5th Cir. 1977) (per curiam) (security guard at military exchange not empowered to search, seize, or arrest).

whether a search is justified, not whether it occurred in the first place." *Pellegrino v. U.S. Transp. Sec. Admin., Div. of Dep't of Homeland Sec.*, No. 15-3047, 2019 WL 4125221, at *6 (3d Cir. Aug. 30, 2019) (en banc).

That no individualized suspicion is necessarily required for the most basic screening at an airport[3] should mean that most searches that take place are reasonable, and may explain why so few complaints have been filed alleging violations committed by TSOs. *See Pellegrino*, No. 15-3047, 2019 WL 4125221, at *12 (noting that in 2015, "fewer than 200 people (out of over 700 million screened) filed complaints with the TSA alleging harm that would fall within the scope of the [law enforcement] proviso.") (citation omitted)). But notwithstanding the relative intrusiveness of an airport screening or standard required to conduct one, the screening is still a search, and, particularly because TSO screenings may involve invasive examinations of a person, the screenings still present the risk of abuse that prompted Congress to incorporate the law enforcement proviso in the first place. *See* S. Rep. No. 93-588 (again, noting the view that the Federal Government should be liable for the tortious acts of law enforcement officers who violate someone's Fourth Amendment rights by acting "in bad faith or without legal justification.").[4]

Finally, TSOs are authorized, as § 2680(h) requires, to execute searches "for violations of Federal law," assuming that the phrase "for violations of Federal law" even

---

[3] *See City of Indianapolis v. Edmond*, 531 U.S. 32, 37-40 (2000); *Aukai*, 497 F.3d at 958-62.

[4] *See also Pellegrino*, No. 15-3047, 2019 WL 4125221, at *9 n.3, recounting examples of alleged overstepping that generated public headlines: "Rowaida Abdelaziz, *Muslim Woman Says TSA Forced Her to Show Her Bloodied Pad During Airport Screening*, Huffington Post (Aug. 23, 2018), https://bit.ly/2LjzI7r; Lori Aratani, *Watch the Video of TSA Officers Doing a Pat-Down of a 96-Year-Old Woman in a Wheelchair That Has People Outraged*, Wash. Post (June 12, 2018), https://wapo.st/2Om6SFi; Travis Andrews, *'You Cannot Touch Me There,': Breast Cancer Patient Claims TSA 'Humiliated' and 'Violated' Her*, Wash. Post (Dec. 8, 2016), http://wpo.st/ieQP2; Elizabeth Chuck, *Father Outraged by 'Uncomfortable' TSA Pat-Down on 10-Year-Old Daughter*, NBC News (Jan. 6, 2016), http://nbcnews.to/1Ju6h0M; Ray Sanchez, *New York TSA Worker Accused of Sexually Abusing Passenger*, CNN (Aug. 29, 2015, 7:29 AM), https://www.cnn.com/2015/08/28/us/new-york-tsascreenercharged/index.html; Omar Villafranca, *TSA Agents Allegedly Strip-Search Woman, Fiddle with Feeding Tube*, NBC News (July 19, 2012), http://bit.ly/2dk1VjL; Richard Esposito & Alicia Tejada, *Now Three Grandmas Say They Were Strip-Searched at JFK*, ABC News (Dec. 6, 2011), http://abcn.ws/2dSDiJL."

applies to the power to "execute searches." *See, e.g.*, 49 U.S.C. § 46505 (providing criminal penalties for "[c]arrying a weapon or explosive on an aircraft"); 49 C.F.R. §§ 172.101, 175.10(a) (listing "hazardous materials" that are not permitted on flights). Section 2680(h) refers to both investigative *and* law enforcement officers, and provides no basis for reading in a requirement that the violations of Federal law must be criminal.[5] Even if certain types of airport contraband are legal in other contexts, the ultimate purpose of screening for such contraband is to "assess[] whether cargo poses a threat to transportation security." 49 U.S.C. § 44901(g)(4).

Although the United States emphasizes that the majority of courts to address this issue have concluded, for one reason or another, that TSA agents do not qualify as investigative or law enforcement officers empowered to execute searches, this Court's conclusion is consistent with the Third Circuit's recent *en banc* opinion in *Pellegrino*, No. 15-3047, 2019 WL 4125221 (3d Cir. Aug. 30, 2019). The Third Circuit had the benefit of deciding *Pellegrino* after extensive briefing on the issue from both sides. This appears not to have been the case in other courts, including here, where the most thorough argument on the issue was provided in the United States' reply brief. *See also Corbett v. Transp. Sec. Admin.*, 568 F. App'x. 690 (11th Cir. 2014) (per curiam) (where plaintiff filed a *pro se* complaint and appeal); *Wright ex rel. Wright*, 639 F. App'x. 219, 222 n.3 (5th Cir. 2016) (noting that Plaintiff "never argued that he f[ell] under the 'law enforcement officer' proviso contained in 28 U.S.C. § 2680" and had "not contended that [the federal employee] was designated as a 'law enforcement officer' by the TSA."). For many of the reasons stated above, the Court finds the majority opinion in *Pellegrino* most persuasive.

Therefore, the Court will deny the United States' Rule 12(b)(1) Motion to Dismiss Plaintiff's intentional tort claims.

**II.     Negligent Infliction of Emotional Distress (NIED)**

The United States asserts that Plaintiff's NIED claim is also barred by section

---

[5] "And even if it did, TSOs search for weapons and explosives, and carrying them on board an aircraft is a criminal offense." *Pellegrino*, No. 15-3047, 2019 WL 4125221, at *9 (citing 49 U.S.C. § 46505).

2680(h). *See United States v. Shearer*, 473 U.S. 52, 54-56 (1985) (28 U.S.C. § 2860(h) bars not only claims for "assault, battery, [and] false imprisonment," but also any claims arising out of conduct constituting theses torts.) As noted by the United States, although NIED is a formally negligence-based tort, "the proper inquiry is whether Plaintiff's claim for NIED is predicated on alleged conduct constituting any of the torts enumerated in § 2680(h)." (Doc. 21, pg. 14.) *See Sabow v. United States*, 93 F.3d 1445, 1456 (9th Cir. 1996) ("We focus our § 2680(h) inquiry on whether conduct that constitutes an enumerated tort is 'essential' to a plaintiff's claim."). Because Plaintiff's NIED claim is entirely based on the same alleged conduct underlying her intentional tort claims and because the Court has concluded the intentional tort claims are not barred by section 2860(h), the United States' Motion to Dismiss will be denied as to the NIED claim as well.

### III. Constitutional Claims

Finally, Plaintiff alleges that her Fourth Amendment right to be free of unreasonable searches and seizures was violated during her screening and the subsequent pat down search.[6] The only jurisdictional basis Plaintiff cites for her claims is section § 1346(b)(1) of the FTCA. As the Government notes, however, Plaintiff's constitutional tort claims are not cognizable under the FTCA. *F.D.I.C. v. Meyer*, 510 U.S. 471, 478 (1994). "[T]he United States has not waived its sovereign immunity in actions seeking damages for constitutional violations." *Thomas-Lazear v. F.B.I.*, 851 F.2d 1202, 1207 (9th Cir. 1988) (adding that "[t]he *Bivens* remedy exists against individual officials, not against the United States."). The Court will therefore grant the United States' Motion to Dismiss Plaintiff's constitutional claims.

//

//

---

[6] Plaintiff clarified that she "was not attempting to claim that the TSA's screening procedures violate the Fourth Amendment (and therefore also does not oppose Defendant's argument that the Court of Appeals has exclusive jurisdiction over such a claim)." (Doc. 12, pgs. 4-5, n.3.) Plaintiff also states that she "does not oppose Defendant's argument concerning her constitutional claims," but goes on to assert that "Defendant is not immune from FTCA claims for those claims either." (*Id.* at 4-5.) The Court thus briefly addresses the United States' argument for dismissal.

**Conclusion**

IT IS ORDERED that Defendant's Motion to Dismiss (Doc. 9) is GRANTED IN PART as to Count IV and DENIED IN PART as to Counts I-III.

Dated this 30th day of September, 2019.

_____
Honorable Jennifer G. Zipps
United States District Judge